# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| VINCE HARRIS, as personal representative of the Estate of William Harris III, and SHARON GRANTHAM, | CV 24–87–BU–DLC |
| Plaintiffs, | ORDER |
| v. | |
| JAY HUBBER, NICHOLAS JAEGER, ALIBI BAIL BONDS, LLC, CITY AND COUNTY OF BUTTE-SILVER BOW, and JOHN DOES 1-5, | |
| Defendants. | |
| JAY HUBBER, ALIBI BAIL BONDS, LLC, | |
| Counter-Plaintiffs, | |
| v. | |
| VINCE HARRIS, as personal representative of the Estate of William Harris III | |
| Counter-Defendants. | |

- 1 -

JAY HUBBER, ALIBI BAIL BONDS, LLC,

        Third-Party Plaintiffs,

v.

CITY AND COUNTY OF BUTTE-SILVER BOW,

        Third-Party Defendant.

Before the Court is Plaintiffs Vince Harris, as personal representative of the Estate of William Harris III, and Sharon Grantham's motion for partial summary judgment. (Doc. 54.) For the reasons herein, the motion is DENIED.

**FACTUAL BACKGROUND**[1]

Plaintiff Vince Harris, as personal representative of the Estate of William Harris III filed this civil rights action in Montana Second Judicial District Court, Silver Bow County against Defendants Jay Hubber, Nicholas Jaeger, Alibi Bail Bonds, LLC ("Alibi Bonds"), Crum and Forester Indemnity Company, and John Does 1–5. (Doc. 6.) Defendant Crum and Forester Indemnity Company removed

---

[1] There are limited undisputed facts in this case. (*See* Docs. 62, 63.) Accordingly, the facts in this section are derived in large part from the allegations contained in the Second Amended Complaint ("SAC") (Doc. 52) and are therefore treated as alleged facts intended for background purposes only. The Court relies on the Parties' undisputed facts (Docs. 62, 63), detailed separately below, for the purposes of resolving the instant motion for partial summary judgment.

the matter to this Court due to this Court's federal question jurisdiction over Plaintiffs' § 1983 claim. (Doc. 1.)

In 2025, Plaintiff Vince Harris, now joined by Plaintiff Sharon Grantham, the mother of William Harris III, filed the Second Amended Complaint ("SAC"). (Doc. 52.) The SAC alleges, in relevant part, as follows.

In 2021, David Sandoval was criminally charged for felony criminal possession of dangerous drugs, burglary, and felony theft. (*Id.* ¶ 4.) In August 2021, Sandoval retained the services of Defendant Jay Hubber of Alibi Bonds to bond him out of jail. (*Id.* ¶ 5.) Following his release from jail, Sandoval failed to appear for a scheduled hearing. (*Id.* ¶ 7.) Montana District Court Judge Whelan issued a bench warrant for Sandoval's arrest. (*Id.*) Butte City Court Judge Jerome McCarthy also issued two misdemeanor warrants. (*Id.* ¶ 8.) A month later, Judge Whelan issued an additional bench warrant. (*Id.* ¶ 9.) Around the same time, Butte City Court mailed a notice of bond forfeiture to Defendant Hubber, notifying him that he had 90 days to remit payment or bring Sandoval before the court. (*Id.*)

On December 19, 2021, Hubber was bar hopping with a fellow bonding agent, Jackie Swartz, when he received a phone call regarding Sandoval. (*Id.* ¶ 10.) Hubber learned that Sandoval was staying at the home of the deceased William Harris III. (*Id.*) Hubber contacted Jesse Jaeger to assist in apprehending Sandoval. (*Id.* ¶ 11.) Jesse Jaeger brought his brother, Defendant Nicholas Jaeger, to assist in

Sandoval's arrest. (*Id.*) Following communications with dispatch, Hubber, Schwartz, and Jesse and Nicholas Jaeger proceeded to Harris's home. (*Id.* ¶ 15.)

Hubber and Nicholas Jaeger entered the home without knocking or identifying themselves, located Sandoval, and tased him several times. (*Id.*) A scuffle ensued, and at some point during the scuffle, Nicholas Jaeger grabbed Hubber's handgun and shot Harris twice, killing him. (*Id.* ¶ 16.)

From March 4, 2024 to March 14, 2024, a jury trial was held in the Second Judicial District Court, Silver Bow County, Montana, regarding *State of Montana v. Nicholas John Jaeger*, Cause No. DC-22-11, and *State v. Montana v. Jay Steven Hubber*, Cause No. DC-22-12. (Docs. 62 ¶ 1; 63 ¶ 1.) The jury found Defendant Hubber guilty of aggravated burglary and deliberate homicide by accountability, based on the incidents that occurred at Harris's home. (Docs. 62 ¶ 3; 63 ¶ 3.) The jury found Defendant Jaeger guilty of deliberate homicide and aggravated burglary. (Docs. 62 ¶ 2; 63 ¶ 2.)

## PROCEDURAL BACKGROUND

Plaintiffs filed this 18 U.S.C. §1983 civil rights action in Montana Second Judicial District Court, Silver Bow County against Jay Hubber, Nicholas Jaeger, Alibi Bonds, Crum and Forster Indemnity Company, and John Does 1–5. (Doc. 6.) Defendant Crum and Forester Indemnity Company removed the matter to this

Court due to this Court's federal question jurisdiction over Plaintiffs' § 1983 claim. (Doc. 1.)

Hubber and Alibi Bonds filed counterclaims against Harris, crossclaims against Jaeger, and a third-party complaint against City and County of Butte-Silver Bow. (Docs. 7, 14.)

The SAC asserts nine cause of action: Wrongful Death against Hubber, Jaeger, and Alibi (Count I); Battery against Hubber and Jaeger (Count II); Negligence against Hubber, Jaeger, and Alibi (Count III); Trespass against Hubber and Jaeger (Count IV); Negligent Retention/Supervision/Training against Alibi Bonds and the City and County of Butte-Silver Bow (Count V); Vicarious Liability against Alibi Bonds and the City and County of Butte-Silver Bow (Count VI); Negligent Infliction of Emotional Distress against Hubber, Jaeger, and Alibi (Count VII); Intentional Infliction of Emotional Distress against Hubber, Jaeger, and Alibi (Count VIII); and 42 U.S.C. § 1983 against Hubber, Jaeger, and the City and County of Butte-Silver Bow (Count IX). (Doc. 52.)

The Court entered default judgment against Jaeger pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 32.) Pursuant to a stipulation between the parties, the Court dismissed Crum and Forester Indemnity Company. (Doc. 51.)

On November 3, 2025, Plaintiffs filed the instant motion for partial summary judgment. (Doc. 54.) It is unclear from Plaintiffs' opening brief which Plaintiffs

- 5 -

are moving for summary judgment against which Defendants and for which claims. However, following City and County of Butte-Silver Bow's response (Doc. 64), Plaintiffs clarified that they are not seeking summary judgment on their claims against the City and County of Butte-Silver Bow (Doc. 65 at 3.). The motion is now fully briefed and ripe for ruling.

## LEGAL STANDARD

The Court can resolve an issue summarily if the moving party establishes that "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). With these principles in mind, the Court turns to the merits of the issues presented.

## DISCUSSION

### I.    Undisputed Facts

The following facts are undisputed or deemed as substantively undisputed:

1. A jury trial was held in the Second Judicial District Court, Silver Bow County, Montana, from March 4 through 14, 2024,

regarding *State of Montana v. Nicholas John Jaeger*, Cause No. DC-22-11, and *State v. Montana v. Jay Steven Hubber*, Cause No. DC-22-12. (Docs. 62 ¶ 1; 63 ¶ 1.)

2. Following trial, the jury unanimously determined the State proved beyond a reasonable doubt that: 1) Nicholas John Jaeger purposely or knowingly caused the death of William Harris; 2) Nicholas John Jaeger's use of force was not justified; 3) Nicholas John Jaeger was guilty of deliberate homicide and aggravated burglary. (Docs. 62 ¶ 2; 63 ¶ 2.)

3. Jay Hubber was found guilty of 1) aggravated burglary, and 2) deliberate homicide by accountability. (Docs. 62 ¶ 3; 63 ¶ 3.)

4. The following elements were essential to the verdicts of guilt as set forth in the jury instructions:

   a. A person commits the offense of deliberate homicide if the person purposely or knowingly causes the death of another human being. (Doc. 61-2 at 1793.)

   b. A person commits the offense of aggravated burglary if the person knowingly enters or remains unlawfully within an occupied structure and knowingly or purposely commits an offense within the occupied structure, and, in the course of committing the offense, the person purposely or knowingly attempts to inflict bodily injury upon anyone. (*Id.* at 1789.)

   c. In order to convict Jay Steven Hubber of the charge of aggravated burglary, the State must prove the following elements: One, that Mr. Hubber knowingly entered or remained unlawfully in an occupied structure; and, two, that Mr. Hubber knowingly or purposely committed the offense of assault in the occupied structure; and, three, that in the course of committing the offense Mr. Hubber purposely or knowingly attempted to inflict bodily injury on anyone. (*Id.* at 1789–90.)

d. To convict Nicholas John Jaeger of the charge of aggravated burglary, the State must prove the following elements: One, that Mr. Jaeger knowingly entered or remained unlawfully in an occupied structure; and, two, that Mr. Jaeger knowingly or purposely committed the offense of assault in the occupied structure; and, three, that in the course of committing the offense Mr. Jaeger purposely or knowingly attempted to inflict bodily injury on anyone. (*Id.* at 1790–91.)

e. Testimony has been presented that Jay Steven Hubber may be legally accountable for the offense charged in this case. In this respect, you are to be guided by the following rules of law: One, Mr. Hubber is legally accountable for the conduct of another when either before or during the commission of an offense, and with the purpose to promote or facilitate such commission, Mr. Hubber solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. Two, it is a question of fact for the jury to determine from the evidence and from the law as given to you by me whether or not in this particular case Mr. Hubber is or is not legally accountable within the meaning of the law. Three, the testimony of one legally accountable ought to be viewed with distrust. Four, a conviction cannot be had on the testimony of one legally accountable unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect Mr. Hubber with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. (*Id.* at 1794–95.)

## II.   Analysis

Plaintiffs contend they are entitled to partial summary judgment on their claims for wrongful death, battery, negligence, trespass, negligent infliction of

- 8 -

emotional distress, and intentional infliction of emotional distress against Defendants Hubber and Jaeger because Hubber and Jaeger were convicted of deliberate homicide, aggravated burglary, and deliberate homicide under the doctrines of res judicata and collateral estoppel. (Doc. 55 at 3.)

While Plaintiffs treat res judicata and collateral estoppel as interchangeable, the elements and analyses of each doctrine are different, leading to different conclusions. The Court analyzes the undisputed facts of this case under each doctrine in turn.

## A. Res Judicata

Res judicata, commonly referred to as claim preclusion, "provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1051 (9th Cir. 2005). "The elements necessary to establish res judicata are: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Id.* at 1052 (internal quotation marks omitted). Here, there is not privity between the parties. Neither the estate of William Harris nor Sharon Grantham were a party to—nor in privity with a party to—the criminal matter. *See id.* at 1053 (summarizing circumstances in which a person, although not a party, has his interests adequately represented by someone who is a party such that successive litigation by that non-litigant is foreclosed under the doctrine of res judicata).

- 9 -

Plaintiffs fail to establish, as a matter of law, that they are entitled to summary judgment based on res judicata.

## B. Collateral Estoppel

Because "state law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action," *Ayers v. Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990), the Court applies Montana state law.

Collateral estoppel, also referred to as issue preclusion, "bars the reopening of an issue that has been litigated and resolved in a prior suit." *Adams v. Two Rivers Apartments, LLLP*, 444 P.3d 415, 419 (Mont. 2019). Montana law allows the use of collateral estoppel to preclude the re-litigation of issues determined in a criminal proceeding in a subsequent civil proceeding when the following elements have been met: (1) the issue decided in the prior adjudication is identical to the issue raised in the subsequent action; (2) the previous action resulted in a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. *Aetna Life & Cas. Ins. Co. v. Johnson*, 673 P.2d 1277, 1280 (Mont. 1984).

Here, the second and third elements are easily met. As to the second element, the previous criminal case was resolved on the merits resulting in a final judgment. The fact that the matter is on appeal at the Montana Supreme Court does

not alter that conclusion. *See Baltrusch v. Baltrusch*, 130 P.3d 1267, 1274–75 (Mont. 2006) (adopting the conclusion of other courts that the pendency of an appeal does not preclude the collateral estoppel effect of a final judgment). Regarding the third element, unlike res judicata, the fact that a plaintiff was not a party to a previous criminal action is immaterial to the later application of collateral estoppel in a subsequent action. *See Aetna Life & Cas. Ins. Co. v. Johnson*, 673 P.2d at 1278. Rather, "[a]s long as the party against whom the claim is advanced remains the same from the previous action, it is immaterial that the other parties are not precisely identical." In this case, Plaintiffs seek to collaterally estop Jaeger and Hubber—whom were parties in the prior adjudication—from asserting issues that were already adjudicated. The third element is thus met.

At risk of understatement, Plaintiffs fall short of satisfying the first element. Plaintiffs contend that in order to issue a verdict in the criminal action against Hubber and Jaeger, the jury had to decide the following issues that are "essential to Plaintiff[s'] theories" in this case:

> That Nicholas Jaeger purposely and knowingly caused the death of another human being; [t]hat Nicholas Jaeger was not justified in his use of force against Harris; [t]hat Jaeger and Hubber knowingly or purposely entered and/or unlawfully remained in an occupied structure; [t]hat Jaeger and Hubber knowingly or purposely committed the offense of assault in the occupied structure; [t]hat Jaeger and Hubber knowingly and purposely attempted to inflict bodily harm on another inside the occupied structure; [t]hat Hubber, acted with the purpose of promoting or facilitating the death of William Harris III by soliciting, aiding, abetting, and/or attempting to aid Jaeger in killing Harris.

Plaintiffs fail to clearly delineate how these jury findings impact the various elements of each of Plaintiffs' claims or Defendants' defenses. Take, for example, Plaintiff Grantham's claims for negligent and intentional infliction of emotional distress.[2] Plaintiffs do not explain how this Court could conclude that Hubber and Jaeger's criminal convictions satisfy any elements of Grantham's emotional distress claims. Plaintiffs expect the Court to take them by their word without showing their work. But that is not the standard of summary judgment.

It is probable that some legal or factual issues in the matter before the Court could be subject to collateral estoppel. However, at the motion for summary judgment stage, the burden is on the moving party—not the Court—to establish an absence of disputed facts and an entitlement to judgment as a matter of law. Plaintiffs failed to meet that burden.

### CONCLUSION

Plaintiffs fail to meet their burden under the summary judgment standard. Therefore, Plaintiffs' motion must be denied.

Accordingly, IT IS ORDERED that Plaintiffs' motion for partial summary judgment (Doc. 54) is DENIED.

---

[2] This is just an example and should not lead to the conclusion that the request for summary judgment as to Plaintiff Grantham's claims is the only request that is severely lacking in analysis. Rather, the Court views Plaintiffs' motion—in its entirety—as deficient under the summary judgment standard.

DATED this 6th day of April, 2026.

_____
Dana L. Christensen, District Judge
United States District Court